HENRY T. GREEN, as *Administrator of the estate of Theodore Jones, deceased*, v. JAMES E. WILLIAMS, as *Administrator of the estate of Jacob McMurtry, deceased.*

1. SPECIAL FINDINGS, *Court Not Bound to Make, Unless Requested.* Where a case is tried by the court, without a jury, and no request is made for special or separate findings, the court is not bound to find specially, or to state its conclusions of law separately from its findings of fact.

2. ———— The form of the action discussed, and held to be sufficient in this case.

3. AGENT IN ONE STATE, PRINCIPAL IN ANOTHER; *Demand and Refusal; Statute of Limitations.* Where an agent who lives in one state collects money for his principal, who resides in another state, and there is no contract between them as to when or how the agent shall send or pay the money to his principal, no action accrues against the agent for the money until the principal has made a demand of him therefor, and he has refused to pay the same; and consequently the statute of limitations does not begin to run in favor of the agent until after such demand and refusal.

*Error from Leavenworth District Court.*

ACTION brought by *Henry T. Green*, as administrator of the estate of Theodore Jones, deceased, against *Jacob McMurtry*, who died during the pendency thereof. Action revived

in the name of and against *James E. Williams*, as adminis-trator of the estate of Jacob McMurtry, deceased. The dis-trict court, at September Term, 1876, adjudged that the defendant *Williams*, as administrator, etc., go hence without day, and that he recover of said plaintiff *Green*, as adminis-trator, his costs in said suit. *Green* brings the case here for review. The facts are sufficiently stated in the opinion.

*H. T. Green*, for plaintiff in error.

*L. M. Goddard*, and *Pendery & Pendery*, for defendant in error:

The defendant objected to the introduction of any evidence under the petition. The court below, without then passing upon the objection, allowed the evidence to be introduced, and after hearing the same, held that the right of action, if any ever existed, grew out of an unsettled partnership, and that the plaintiff could not recover in this action for two rea-sons: *First*, There having been no settlement between the partners, no account stated and balance agreed upon between them, and no promise by the defendant to pay the sum sought to be recovered, or any other sum, the plaintiff should have set out their transactions and asked for an accounting. But to obviate that objection the court then gave the plaintiff leave to amend his pleadings, which he undertook to do, and presented an amended petition, which in no way answered the objection. *Second*, That had the plaintiff properly brought his action, the evidence conclusively shows that his right to recover was barred by the statute of limitations.

1. We submit that the court was right upon both proposi-tions. (Pomeroy on Remedial Rights, p. 128, § 104; 2 Cal. 86, 420; 3 Cal. 292; 5 Cal. 299; 47 Cal. 179; 20 N. Y. 62; 13 Minn. 394; 9 Wis. 268; 33 Mo. 557; 48 Ind. 247.)

The case at bar illustrates the justness of the doctrine. At the time this suit was brought Jones was dead, and conse-quently McMurtry was not a competent witness as to the transactions between them. The plaintiff should have set

5—21 KAS.

forth and proven the terms of their partnership, the amount of money paid in by each, and the amount of profit realized, if any, that the court would be enabled to determine whether Jones was entitled to any part of the money in controversy.

2. That the plaintiff's claim, however presented, was barred, seems too clear for argument. The money was received by McMurtry on the 3d day of December, 1870. This action was brought June 24th, 1875. McMurtry had resided openly and continuously in the counties of Leavenworth and Wyandotte, in this state, from the time of the receipt of the money until suit was brought, with the exception of three months. There was no concealment either of his whereabouts or of the fact of the receipt of the money.

The latter fact was evidenced by the records of the district court of Leavenworth county. The claim by plaintiff in error that the collection of the money was fraudulently concealed, is not tenable under the facts in this case. There must be proof of actual fraud and concealment. (9 Greenl. 131.)

Concealment cannot be claimed by one who had ample means of detecting the fraud. (31 Maine, 448.)

Jones, by simply writing to H. T. Green, his attorney, could have learned the fact that the money was collected. There is no satisfactory proof that he ever wrote to any one. There is positive proof that McMurtry never received any letter from him.

The statute commences to run from the time the right of action accrued. If any portion of the money collected by McMurtry belonged to Jones, a right of action for the same accrued on the 3d day of December, 1870. It was the duty of McMurtry to pay it immediately. And if he converted it to his own use, the law implied a promise on his part to pay it. (3 Johns. 183.) And in this case plaintiff in error claims that McMurtry, at the time he received the money, expressly promised to pay Jones his share, etc. A demand was not necessary, when it was his duty to remit. (14 N. Y. 492; 48 Penn. St. 524.)

A party who receives money as a *quasi trustee,* or for the use of one to whom it belongs, not acting under a continuing and express trust, and whose duty it is to pay over immediately on its receipt, is liable to an action, and the statute begins to run from the time of the receipt of the money: 1 Gill. (Md.) 234; 15 Wend. 302, 305; 13 Barb. 632.

While the statute of limitations will not commence to run in favor of a trustee of an express trust until he does some act disaffirming the trust, yet we can see no application of that principle to this case. McMurtry was not acting as a trustee for Jones in the collection of the money. A partner after dissolution is not a trustee. (9 Pick. 225.) The relation between partners does not create such a trust as will defeat the statute of limitations. (14 Ark. 62; 9 Pick. 243; 11 Pick. 182; 4 Mason, 139, 152.) And when all dealings between them have ceased for three years the statute will apply. (8 Mee. & W. 769; 5 Johns. Ch. 522; 6 Pick. 344; 17 Mich. 28.) The statute of limitations in this state applies to all actions, equitable as well as legal. (Gen. Stat. 1868, p. 633, §18; 4 Nev. 280; 2 Kas. 389.)

The opinion of the court was delivered by

VALENTINE, J.: It is often more difficult for this court to ascertain from the record of a case what questions are presented for consideration, than it is to decide the questions involved in the case after they are ascertained. This is particularly true in this case. The court below, to whom the case was submitted without a jury, found generally for the defendant and rendered judgment accordingly; but what the opinion of the court was upon the various legal questions involved in the case, we are at a loss to know. The plaintiff in error, plaintiff below, complains of this mode of making findings. He says: "The court found for the defendant, but from some cause the judge has declined to permit the record to show the grounds or points on which the plaintiff failed." Now the court below or judge did not *decline* to do any such thing. The court below by finding generally, did just what

it has been the custom for courts to do, ever since courts were instituted, except where the court is asked to find specially. And the court also found just as the statutes authorized it to find. Section 290 of the code reads as follows:

"Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its findings, except generally, for the plaintiff or defendant, unless one of the parties request it, with the view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state in writing the conclusions of fact found, separately from the conclusions of law." (Gen. Stat. 684.)

No request was made in this case that the court should find otherwise than generally. The court undoubtedly would have found specially, and would have stated its conclusions of law separately from its findings of fact, if even the slightest intimation had been given that such a thing was desirable; but no such intimation was given, and therefore the court found generally, as all courts do in such cases. If special findings had been made, and if the conclusions of law had been stated separately from the findings of fact, then this case could have been presented to this court in something like an intelligent and intelligible manner. Then we could know wherein "the plaintiff failed." Then we could know what the views of the court below were upon the various questions of law involved in the case; and we could know these things fully as well as we could if the case had been tried by a jury, and written instructions given by the court to the jury, and such instructions brought to this court. But taking the case as it is, and as it has been brought to this court, we shall have to grope our way as best we can. We have the pleadings and evidence before us, and we shall endeavor to decide all such questions as are fairly presented by them, and which were fairly raised in the court below, and saved by the plaintiff. And here we might say, that the plaintiff made a motion for a new trial upon nearly all the statutory grounds, which motion was overruled, and the plaintiff duly excepted. By this means the plaintiff

*Special findings must be asked for.*

saved some questions which would otherwise have been lost to him.

The facts of the case, so far as it is necessary to state them, seem to be substantially as follows: In 1865, Theodore Jones and Jacob McMurtry owned forty-eight head of horses, which they had bought in Kansas to take to Illinois to sell. There is no evidence that their partnership extended to anything beyond this single transaction, and all the evidence bearing upon the subject would seem to indicate that they were equal partners. While the horses were in Kansas, General G. M. Dodge and others took them away from Jones and McMurtry, and Jones and McMurtry never obtained possession of them again. Afterward, but in 1865, Jones and McMurtry commenced an action in Kansas against Dodge and others for the damages alleged to have been sustained by reason of the loss of said horses. Afterward, but also in 1865, Jones left Kansas and went to Illinois, where he resided until in 1875, when he died. McMurtry remained in Kansas, where he resided until in 1876, when he died. The witness H. T. Green testified, among other things, "that Jones left Kansas in 1865; that McMurtry agreed with Jones to remain in Kansas and act for him in all matters, and attend to the collection of the money for the horses owned by them and in suit;" and there was no evidence in conflict with this testimony of Green. McMurtry attended to said suit, and on September 28, 1868, judgment was rendered therein in favor of Jones and McMurtry, and against Dodge and others, for $2,928. Several ineffectual attempts were then made to collect this judgment, and the parties had about come to the conclusion that it was worthless; but in 1870, McMurtry, ascertaining that Dodge, who then resided in Iowa, was solvent, commenced another action against Dodge, in Iowa, on the said judgment rendered in Kansas. Soon afterward, and on December 3, 1870, Dodge settled the entire matter, by paying to McMurtry $3,400, the amount of said judgment with interest and all costs. McMurtry gave to Dodge a receipt for the money, to which receipt he signed his own name, "Jacob

P. McMurtry," and also the name of "Theodore Jones." McMurtry never informed Jones that he had collected or received said money, and Jones did not know anything about it until in 1874, and he made no demand therefor, or for any part thereof, until May 25, 1875. This suit was commenced June 24, 1875, for $1,200, which it is alleged in the petition is one-half of the whole amount received by McMurtry after paying all expenses.

From the foregoing facts it would seem that the plaintiff ought to recover; but the defendant says not, and in his brief gives two reasons therefor: 1. He says that Jones and McMurtry were partners; that they never had any settlement of their partnership affairs, and that therefore neither Jones nor his administrator could maintain any action against McMurtry or his administrator, except an action for an accounting; and he claims that this is not that kind of action. 2. And he also claims that the statute of limitations has barred all right of action that ever existed in favor of Jones or his administrator against McMurtry or his administrator.

I. We do not think that the first reason given by the defendant, why the plaintiff cannot recover in this action, is sufficient. 1. Jones and McMurtry did have a settlement of their partnership affairs, as was testified to by McMurtry himself, and this settlement was made after the action of Jones and McMurtry against Dodge and others was commenced. 2. The whole partnership consisted merely in the purchase and ownership of said horses, and the prosecution of said suit against Dodge and others; and the petition sufficiently alleged all the facts connected therewith, so as to make the suit substantially an action for an accounting, if it were necessary that the action should be in that form. 3. And if the petition were defective in any of its statements, and only defective, it might have been amended, as requested by the plaintiff at the close of the trial, so as to make it correspond with the facts proved. We suppose it is not claimed that the partnership still existed at the time that this suit was commenced, for at that time Jones was dead, and the action was

brought by his administrator. The court below probably did not decide this case upon the ground that the action was not brought in the proper form, for the petition showed the nature of the case, as well as the evidence, and the court below, at the commencement of the trial, overruled an objection made by the defendant to the introduction of any evidence under the petition, which objection was made on the ground that the petition did not state facts sufficient to constitute any cause of action. If it was necessary for the court to render judgment against the plaintiff upon the facts as they were proved by the evidence, it would also have been necessary, and equally necessary, for the court to render judgment against the plaintiff upon the same facts as they were alleged in the petition. And if judgment should have been rendered against the plaintiff on the facts as they were alleged in the petition, then it would have been utterly useless to allow the plaintiff to introduce evidence under his petition to prove such facts.

II. We think, however, that the court below rendered judgment against the plaintiff upon the ground that his action was barred by the statute of limitations. In this we think the court below erred. McMurtry was the agent of Jones for the prosecution of said suit against Dodge and others, and for the collection of said money, and for all matters connected therewith. There does not seem, however, to have been any agreement between them as to when or how McMurtry should send or pay the money to Jones when he collected it. Possibly Jones may have intended to come back to Kansas for it when it was collected. But probably he did not think how he should get it, for when he constituted McMurtry his agent to collect it, and when he left Kansas, neither he nor McMurtry had much hopes of ever collecting anything. Now where an agent who lives in one state collects money for his principal who resides in another *Agent in one state, and principal in another; demand and refusal; statute of limitations.* state, and there is no contract between them as to when or how the agent shall send or pay the money to his principal, no action accrues against the agent for the money until the principal has made a demand of him therefor and he has refused to pay

the same, and consequently the statute of limitations does not begin to run in favor of the agent until after such demand and refusal. *Taylor v. Spears*, 8 Ark. (3 Eng.) 429; *Judah v. Dyott*, 3 Blackford (Ind.), 324; *Hyman v. Gray*, 4 Jones (N. C.) Law, 155; *Merle v. Andrews*, 4 Texas, 200; *Baker v. Joseph*, 16 Cal. 173; *Lever v. Lever*, 1 Hill (S. C.) Ch. 62; *Roberts v. Armstrong*, 1 Bush. (Ky.) 263; *Sneed v. Hanly*, Hempstead C. C. 659; *Voss v. Bachop*, 5 Kas. 59; *Krutz and Campbell v. Fisher*, 8 Kas. 90. And this is true where the agent is held to be such by mere implication of law as well as where he is created such by express contract. It is true as between partners, who act as agents for each other and for their firm, and it is also true as between trustees and *cestuis que trust;* that is, before an agent or trustee can be held to be liable to an action at law or suit in equity at the instance of his principal, or before any statute of limitations will commence to run in his favor, he must do some act *hostile* to his principal's rights. Mere lapse of time, or mere neglect on his part, will not be sufficient. Generally, as between partners, the statute of limitations will not commence to run until the partnership has ceased to exist, and generally not until there has been a settlement of the partnership affairs or an adjustment of the liabilities of the copartners among themselves. (*Benoist v. Markey*, 25 La. Ann. 59.) And Mr. Perry in his work on Trusts, says:

"In cases where a possession may be lawful and rightful, it cannot be presumed to be adverse. Thus, one tenant in common cannot be presumed to hold adversely to the other, unless something more is shown than mere lapse of time. A trustee cannot be presumed to hold adversely to his *cestui que trust;* on the contrary, he is presumed to hold for his *cestui que trust* until the contrary appears. (Sec. 866.) And 'it is clear that a person, in ignorance of his right, cannot be presumed to have abandoned it, especially if there is a fraudulent concealment of the cause of action by the guilty party.'" (Sec. 867.)

In the present case it does not seem that McMurtry ever questioned Jones's right to one-half of the money collected from Dodge, less costs and expenses, and he never in words

refused to pay the same. He merely delayed, neglected and evaded payment, which after the demand on May 25, 1875, was tantamount to a refusal, but he never in direct terms refused payment. When Green, who made said demand for Jones, asked McMurtry for Jones's half of said money, McMurtry merely said that "he had paid out some expenses and costs and thought Green ought not to take half without allowing him something for his time and trouble in attending to the interest of Jones and the suit." Under the circumstances of this case, we do not think that any cause of action accrued in favor of Jones and against McMurtry until said demand was made on May 25, 1875, and hence the cause of action set forth in this action is not barred by any statute of limitation.

The judgment of the court below will be reversed, and cause remanded for a new trial.

All the Justices concurring.