MATTHEW RYAN v. JAMES E. WILLIAMS, *as Administrator of the Estate of Jacob McMurtry, Deceased.*

COST BOND OF ADMINISTRATOR, *Construed*.   In an action pending in the district court, in which Henry T. Green, as administrator of the estate of Theodore Jones, deceased, was the plaintiff, and James E. Williams, as administrator of the estate of Jacob McMurtry, deceased, was the defendant, Matthew Ryan, as surety, gave the following cost bond, to wit:

"Henry T. Green, as Administrator of the Estate of Theodore Jones, deceased, Plaintiff, *v.* James E. Williams, as Administrator of the Estate of Jacob McMurtry, deceased, Defendant.—I, Matthew Ryan, a resident of Leavenworth county, in Kansas, hereby bind and obligate myself that the plaintiff above named shall pay all costs that may accrue in the above-entitled action, in case he shall be adjudged to pay the same," etc.

*Held*, That Ryan bound himself to pay only such a judgment as might be rendered for costs against Henry T. Green, as administrator of the estate of Theodore Jones, deceased, and did not bind or obligate himself to pay any judgment for costs that might be rendered against any other or subsequent administrator of such estate.

*Error from Leavenworth District Court.*

AT the April Term, 1882, of the district court, *James E. Williams*, as administrator of the estate of Jacob McMurtry, deceased, recovered a judgment against defendant *Matthew Ryan*, who brings the case to this court. The facts appear in the opinion.

*H. T. Green*, for plaintiff in error:

The court erred in holding that Ryan was security for the estate of Theodore Jones. That estate, and every estate of a deceased person, is incapable of suing or being sued. The estate is neither a person nor a corporation. The estate is the goods, chattels and property which were owned by the dead man. His death suspends all legal proceedings. The estate cannot be a party to a suit. The administrator is the representative, and can sue or be sued, and he alone is the party. Green was the principal, and Ryan was surety for his default. Green was administrator of Jones's estate, and for any judgment against him, Ryan by the terms of the bond was bound only when there was a breach of the obligation, until there was a judgment against Green as administrator. There was no breach of the bond. There was a judgment against the surety before there was any judgment against his principal.

Sureties are never held responsible beyond the clear and absolute terms and meaning of their undertakings. Presumptions and equities are never allowed to enlarge or in any degree to change their legal obligations. (11 U. S. Dig., F. S., p. 111, § 148, citing *Leggett v. Humphreys*, 21 How. 66; *Field v. Rawlings*, 1 Gilm. [6 Ill.] 581; 39 Me. 188; 10 Johns. 180; 10 Mo. 559; 31 Barb. 297; 1 Fla. 327.)

Ryan did not obligate himself to pay any costs adjudged to be paid by Adams as administrator. Green was his principal. If the principal was liable for no costs, the surety was liable for none. (Brandt on Suretyship, § 422; 9 Conn. 236.)

A party entered into a recognizance in a court below, which provided that the plaintiff should prosecute his suit to effect,

etc. Before the suit was terminated the plaintiff died, and a judgment was afterward rendered in the case against the plaintiff for costs. *Held*, The surety was not liable for costs made before the plaintiff's death, nor for any costs. (Brandt on Suretyship, § 422, and authorities cited.) So where the plaintiff in a case was changed, after the surety in an appeal bond had become liable, it was held that such surety was not liable for any judgment which might thereafter be rendered in the case. (2 Sneed, 154; 6 Ohio St. 501; 17 Ohio, 565; 17 Wend. 422.)

A surety for one administrator is not liable for the acts of or judgments against another administrator. And so distinct are the rights and duties, that one administrator may in some cases sue his co-administrator or co-executor. (16 Kas. 564.)

A surety is entitled to be subrogated to all the rights of the creditor on the payment of the debt. (2 Johns. Ch. 554; 10 Johns. 524; 1 Ired. Eq. 113; 3 Bush, 77; 11 U. S. Dig., F. S., title, *Principal and Surety*, p. 132, subdiv., *Subrogation*.)

This is a proceeding to recover costs of a surety. The right to costs exists only by statute, and is not a contract. At common law there were no costs. See *State v. Kiner*, 41 N. H. 228, which holds that all costs allowed to any party in any case, either civil or criminal, are given by statute both in England and in this country. (27 Me. 548; 18 How. Pr. 385, 532; 4 Duer, 625.) A judgment for costs is not a contract within the United States constitution and the laws of Iowa. (3 Iowa, 489.)

It is provided in some states that trustees shall not be required to give security for costs; and there are grave doubts in the profession whether administrators are within the letter or spirit of our statute requiring parties to give security for costs. If the views of the court below are correct, then administrators are not, and the bond is voluntary; and the order of the court requiring one to be given is void.

In England, unless the administrator or executor reside

abroad, no surety for costs will be required, ( 2 Jacob's Fisher's Dig., p. 2684,) except as provided by statutes of England. (4 Jacob's Fisher's Dig., p. 5397.) There is no statute of Kansas requiring in terms trustees or administrators to give security for costs.

*Lucien Baker,* for defendant in error :

After the appointment of Williams as administrator, and the revivor of the suit against him as administrator of the estate of Jacob McMurtry, deceased, this suit became an action in the district court to establish a claim against the estate of a deceased person, (Executors and Administrators Act, § 82,) a contest really between two estates, in which no *personal* judgment could be rendered either against Green or Williams. The only judgment that could be rendered would be either for or against them in their representative capacity, to wit: as administrators, etc., of the estate of either Jones or McMurtry. Of course some one must represent the estate before suit can be brought, and in a case like this it is an administrator; but the administrator as an *individual,* is not the real party in interest. His expenses, in contemplation of law, are to be paid out of the estate. His acts in the lawful discharge of his duties generally bind the estate, and not the administrator personally. Judgments for or against him are in his representative capacity. All the time it is the estate that is either to gain or lose by the litigation. It makes no difference who happens to be administrator. One can resign, another be appointed, yet the contest all the time is between the estates. Hence, when security for costs was required in this suit, it was on behalf of the plaintiff estate, not on account of Green *individually,* because, as an individual, in contemplation of law he had no interest in the estate. He was a mere figure-head acting in a representative capacity, and while so acting, this bond was required and given. The bond provides that the plaintiff will pay, etc. Green contends that he, individually, is the principal in the bond. We say no, the estate is the principal; the estate is the real plaintiff, the real party in

interest. His whole argument is based upon the use of the word "he," in the fourth line of the bond, to wit: "in case he shall be adjudged to pay," etc. It would be more grammatical to use the pronoun "it." Yet we think Ryan ought not to escape liability because of a grammatical error.

If this bond was given as security for costs on behalf of Green in his individual capacity, not as representative of an estate, then Ryan's liability would be doubtful, and some of the many authorities cited by plaintiff in error might be in point. But we do not believe that the bond, under all the circumstances of this case, can by a fair construction be thus tortured into Green's individual bond, and Ryan's liability whittled down to the former's individual liability.

It will be observed that at least three-fourths of all the costs in the suit were made while Green was administrator. If the scheme of resigning will work, then indeed have we learned a new method by which an insolvent estate may vex, harass and annoy courts and parties, without ever paying one cent of costs. In cases of this kind the principal amount of costs is made by taking depositions, and necessary expenses before the actual trial of the case. Then, all that is necessary to escape payment of costs, is for the administrator, on the trial and just before a decision against him, to rush into the probate court and resign, and then suddenly appear in court and suggest to the trial judge that his duties as administrator have ceased, stop the trial, have another administrator appointed, then let judgment go against such substituted party in his representative capacity.

The court ordered a bond to be given, and one was given, and the question as to the authority of the court to require a bond is not before this court. The record fails to show any exceptions to the order requiring the giving of a bond. No reference is made to such matter in the petition in error. But the court has the power to require an insolvent estate to give security for costs. (*Foreman v. Campbell*, 9 Ben. 472.)

The opinion of the court was delivered by

VALENTINE, J.: This action was originally commenced on June 24, 1875, in the district court of Leavenworth county, by H. T. Green, as administrator of the estate of Theodore Jones, deceased, against Jacob McMurtry, to recover $1,200, claimed to have been due from McMurtry to Jones at the time of the death of Jones. Judgment was rendered in the district court in favor of McMurtry and against Green, and Green took the case to the supreme court on petition in error. While the case was pending in the supreme court McMurtry died, and the action was revived against James E. Williams, as administrator of McMurtry's estate. The supreme court reversed the judgment of the district court, and remanded the case to that court for a new trial. (*Green v. Williams*, 21 Kas. 64–73.) After the return of the case to the district court, that court ordered the plaintiff to give security for costs, which the plaintiff did by causing the execution and the filing of the following bond, to wit:

"Henry T. Green, as Administrator of the Estate of Theodore Jones, deceased, Plaintiff, *v*. James E. Williams, as Administrator of the Estate of Jacob McMurtry, deceased, Defendant:—I, Matthew Ryan, a resident of Leavenworth county, in Kansas, hereby bind and obligate myself that the plaintiff above named shall pay all costs that may accrue in the above-entitled action, in case he shall be adjudged to pay the same; and I further bind and obligate myself that he will pay all costs made by him in said action, in case judgment be obtained against the defendant herein, and the same cannot be collected from the defendant, as ordered by the court herein.

"Given under my hand at Leavenworth city, Kansas, this 12th day of February, 1879.        MATTHEW RYAN."

On September 29, 1879, Green resigned as administrator of the estate of Theodore Jones, deceased, and Robert Adams was duly appointed and qualified as his successor; and on October 28, 1879, the action was revived in the name of Robert Adams, as administrator of the estate of Theodore

Jones, deceased, and the action was afterward carried on in his name. On April 24, 1880, a trial was had in the case, which resulted in a judgment in favor of the defendant Williams, as administrator, etc., and against the plaintiff Adams, as administrator, etc., for the costs of the action. These costs have never been paid. On May 1, 1882, the defendant Williams, as administrator, etc., after giving due and proper notice, filed a motion in accordance with the provisions of § 585 of the civil code, asking that judgment be rendered in favor of the defendant and against Matthew Ryan, the surety on the above-mentioned cost bond, for the amount of said costs, aggregating the sum of $436.55. Afterward, and on May 20, 1882, this motion was heard by the court, and the court made the following findings, to wit:

"That said Matthew Ryan has been duly and legally served with said notice of said motion, and that the costs herein for which said Matthew Ryan is liable as surety amount to the sum of four hundred and thirty-six dollars and fifty-five cents ($436.55); and the court finds that said sum of $436.55 is composed of the following unpaid costs as follows, to wit: From commencement of action, June 24, 1875, to September 4, 1876, on which last date the death of the defendant was suggested and the action revived in the name of James E. Williams, administrator, &c., as aforesaid, the costs amounted to the sum of $64.85, unpaid; from September 4, 1876, to Sept. 29, 1879, on which last-named date H. T. Green resigned as administrator and Robert Adams applied to be substituted as party plaintiff herein, and was on the 28th day of October, 1879, substituted as party plaintiff herein, the costs from said 4th day of September, 1876, to said 29th day of September, 1879, remaining unpaid, amounted to the sum of $252.55; from September 29, 1879, to and including the 2d day of May, 1882, on which last-named date the notice and motion of said defendant for judgment against said Matthew Ryan as surety was of record, the costs amount to the sum of $119.15, unpaid, making in all said sum of $436.55.

"To all of which findings and decision of the court said Matthew Ryan excepted, and presented and filed his motion for a new trial hereof."

The court below overruled Ryan's motion for a new trial,

and then, upon the foregoing findings, sustained the motion of the defendant Williams, and rendered judgment in favor of the defendant Willams and against the surety Ryan, for the said sum of $436.55, to which ruling and judgment the plaintiff duly excepted; and he now brings the case to this court for review.

Did the court below err in sustaining the motion of the defendant Williams for judgment against the surety Ryan, and in rendering such judgment? This question depends wholly and entirely upon the interpretation that may be given to the surety bond executed by Ryan; and it depends wholly and entirely upon the true signification and meaning of that portion of such bond which reads as follows: "I, Matthew Ryan, . . . hereby bind and obligate myself that the plaintiff above named shall pay all costs that may accrue in the above-entitled action, in case he shall be adjudged to pay the same." The words "plaintiff above named," and "he," as used in the foregoing extract, undoubtedly mean "Henry T. Green, as administrator of the estate of Theodore Jones, deceased;" for Henry T. Green, as such administrator, and as described by these words, was the plaintiff in the action, and the only plaintiff, and the title to the bond itself so shows. Therefore, if we fill out the above-quoted extract as it should be read, it will read as follows:

"I, Matthew Ryan, . . . hereby bind and obligate myself that the plaintiff above named [Henry T. Green, as administrator of the estate of Theodore Jones, deceased] shall pay all costs that may accrue in the above-entitled action, in case he [Henry T. Green, as administrator of the estate of Theodore Jones, deceased] shall be adjudged to pay the same."

The plaintiff in error, Ryan, claimed in the court below, and now claims, that he is liable on said bond to pay only such a judgment as might be rendered for costs strictly and literally against "*Henry T. Green,* as administrator of the estate of Theodore Jones, deceased," and that he is not liable for the payment of the present judgment, which was not so rendered, but was rendered in fact against *Robert Adams,* as adminis-

trator of such estate—against Robert Adams, who was in fact an administrator *de bonis non;* and Ryan further claims that he cannot be held liable on such bond for any other judgment that might be rendered against any other successor of Green. He claims that the bond was not given as a security for the satisfaction of any judgment that might be rendered against any successor of Green as well as against Green himself; but that the bond was really given as a security only for the satisfaction of such a judgment as might be rendered against Green alone as administrator, etc. He says in substance, that as the bond was given as a security insuring performance by something that could be designated by the word "plaintiff," and could be represented by the personal pronoun "he," such security cannot at all be considered as a security on the part of the mere lifeless *estate* of Theodore Jones, deceased, for the reason that an estate of a deceased person is not a thing that can perform any act, or can be designated by either the word "plaintiff," or the word "he;" that it is not a person, or a corporation, or a partnership, or anything else that is capable of suing or being sued; but that such estate is merely the goods, chattels, and real estate: the property, the assets of such deceased person which belonged to him during his lifetime, and which at his death passed to his legal representatives. He says that the estate of a deceased person cannot be a party to a suit, and cannot be represented in any suit except by some living, breathing, moving being, who acts as the representative of the deceased person, such as an executor, administrator, heir, devisee, or legatee; and that the giving of a bond by any person as the surety for any one of such representatives, is not at all the giving of a bond as the surety for any other of such representatives. For the purpose of showing the independent character of separate administrators, even where they all represent the same estate at the same time, the plaintiff in error cites *Rizer v. Gillpatrick,* 16 Kas. 564. The plaintiff in error also cites, among other cases, *Parsons v. Williams,* 9 Conn. 236; *Myres v. Parker,* 6 Ohio St. 501; *Phillips v. Wells,* 2 Sneed (Tenn.), 154. The plain-

tiff in error also claims that as he was a surety for Green alone as administrator, that Green alone was his principal, and that Adams never was his principal in any manner or in any capacity. He further claims that a surety, on paying the debt of his principal, has a right to be subrogated to all the rights of the creditors; but he says that in this case, that as Adams, the party against whom the judgment was rendered, never was his principal, he (Ryan), even if he should pay the present judgment, could not be subrogated to the rights of Williams, the judgment creditor, and the obligee of his (Ryan's) principal.

On the other hand, the defendant in error claims that this litigation is really a contest between two estates — the estate of Theodore Jones on the one side, and the estate of Jacob McMurtry on the other side; and that the administrators of such estates are mere figure-heads in the litigation. He claims that no personal judgment could be rendered in favor of or against either of them; but that any judgment rendered in favor of or against either of them must be a judgment in favor of and against them respectively in their representative capacities only. He says that these administrators have no personal interest in the contest; that whatever they may do, or whatever judgment may be rendered in the case either for them or against them, the loss or gain will not be a loss or gain to either of them personally, but will be a loss or gain only to the estate which they respectively represent. He says that one administrator may resign and that another administrator for the same estate may be appointed in his place, and the contest will go on just the same as though no change had been made with respect to administrators. Hence he claims that whenever security for costs is given by the administrator of an estate, the security must be given so as to bind the estate and not merely to bind the administrator, though perhaps in form it may bind only the administrator; and that it will make no difference who may afterward become the administrator for such estate, or how many changes may be made with respect to administrators, for in any case

the security will still bind the estate and the surety on the bond will still be responsible. He claims that in the present case the bond was given as a security on the part of *the estate* of Theodore Jones, deceased, and not merely as a security on the part of *Henry T. Green* as administrator of such estate. He claims that the word "he" in the bond was incorrectly used, and that instead thereof the word "it," or the words "the estate," or some other equivalent word or words, should have been used; but yet he claims that the incorrect use of the word "he" will not make any difference in the case. He admits that an estate cannot in form be a party to an action, but he claims that it may be such in reality. He admits that an estate must have some one to represent it in any litigation which may in any manner affect the estate, but he claims that the representative of the estate is a mere figure-head, and that the estate itself is the real entity, the real party in interest; and hence he claims that Ryan's bond obligated him to pay any judgment for costs that might be rendered in favor of any administrator of McMurtry's estate, and therefore that the judgment rendered against Ryan in the present case was right.

We think the judgment in the present case is erroneous. Many courts hold that a surety on a bond is liable only within the strict letter of his bond; and no court holds that a surety is liable beyond the reasonable implications of his bond. The bond in all cases must speak for itself; and sureties may always stand upon its literal terms, or upon its literal terms and its reasonable implications; and if these do not make the surety liable, nothing else can. No far-fetched equities nor overstrained constructions are allowable as against sureties. Their bond expresses their contract, sets forth their obligation, and defines their liability; and we are not at liberty to resort to extraneous matters to enlarge their liability. In the present case Ryan did not bind himself to pay any costs except such as might be included in a judgment rendered against Henry T. Green as administrator of the estate of Theodore Jones, deceased. If it be said that the bond

should have been more comprehensive, that it should have been a security for any judgment for costs that might be rendered against either Green or any successor of Green, then it may be asked: why was not such bond taken? Possibly, however, Mr. Ryan would not have given such a bond. Possibly he would have refused to become a surety for any person or any administrator except Green. Possibly he might have said: "I know Green, and am willing to be surety for the payment of any judgment for costs that may be rendered against him; but if he should die, or resign, or be removed, I might not be willing to be a surety for the payment of any judgment that might be rendered against his successor." His successor might wrongfully or carelessly allow an immense amount of costs to accumulate in the case; and then might wrongfully or carelessly allow a judgment to be rendered against him for the same. Possibly Mr. Ryan would not, under any circumstances, have been willing to become a surety for Robert Adams, who was the successor of Mr. Green; and certainly Ryan should not be held to be a surety for Adams unless the bond, by a fair interpretation of its literal terms, shows that he intended to become such a surety — that is, a surety not only for Green, but also a surety for any successor of Green. Green's successor might have been an enemy both of Green and Ryan. It is said that the estate of a deceased person is the real entity, the real party in interest, and that the administrator is only a figure-head. Now supposing that this is true; then the bond in the present case was taken in express terms, in the name of the figure-head. There is not only nothing in the bond to show that Ryan intended to become a surety for Adams, or for any one of Green's successors, or for the estate generally, but the bond clearly and explicitly shows that he intended to become a surety for only H. T. Green as the administrator of such estate. As has been said by counsel for plaintiff in error, an estate of a deceased person is not a person, or a corporation, or a partnership, or anything else that can sue or be sued, or contract or be contracted with, or that can perform any other

act or thing; but it is simply the property, the assets of such deceased person. It is true that we sometimes, by a kind of fiction or figure of speech, clothe an estate with a kind of personality. We speak of it as though it were something that could sue and be sued, and could contract and be contracted with; but in fact, as all lawyers know, it is no such thing, and has no such powers. But this use of language with regard to estates will not in the least help the defendant in error in the present case, for such figurative language was not used in the bond in controversy. The bond was not given as security for *the estate*, nor did it mention the estate as a thing that could be a principal on a bond, or that could sue or be sued, or contract or be contracted with, or perform any other act; but the bond was given, strictly and literally, as a security for the payment of only such a judgment for costs as might be rendered against Henry T. Green as administrator of the estate. There is not the slightest room in the present case for resorting to figures of speech, for the bond itself does not use them. If the bond had provided that Ryan should pay all costs in the case that *the estate* might be adjudged to pay, then it might very plausibly be claimed that Ryan should pay all costs that Adams was in fact adjudged to pay, for Adams is the representative and the administrator of such estate. But the bond does not so provide. It does not use the words "the estate" in any such connection. It simply says that Ryan shall pay all costs which "he ('Henry T. Green,' etc.) shall be adjudged to pay." It is true, that a contract generally binds both the party to the contract and his legal representatives; and it is sometimes true that a surety for a party is not only a surety for the party himself, but is also a surety for the legal representatives of such party. And, applying these principles, we would think that it would generally follow that an ordinary cost bond would bind the surety to satisfy not only any judgment for costs which might be rendered in the case against the plaintiff (the surety's principal), but that it would also generally bind the surety to satisfy any judgment for costs

which might be rendered in the case against any legal representative of the plaintiff; for in such a case the plaintiff and his legal representative would be considered as one in identity — one and the same party. The legal representative in such a case would be considered, both in law and in fact, as actually a representative of his principal, and all the rights of the parties and their sureties would be determined accordingly. But such a principle can have no application in the present case. Adams is not a legal representative of Green; indeed, he is not the representative of Green at all, in any respect, in any manner, or for any purpose. He is merely a successor of Green — a successor in about the same manner as one public officer is the successor of his predecessor, and is not in any sense his representative. Their interests might be antagonistic. Adams as administrator might sue Green for acts done or omitted as administrator. Surely there is no identity of interest between them. Adams does not represent Green's personal interest, nor the interest of Green as administrator; but he simply represents the interests of the estate of Theodore Jones, deceased. A representative of Green would be an agent of his or some person succeeding to his estate after his death.

We would refer to the authorities cited by counsel. See also the case of *Riddel v. School District*, 15 Kas. 168, 170, where it was held in favor of a surety on a school-district officer's bond, that the surety was not liable. This is a very strong case against the liability of sureties on bonds, except where they are unmistakably made liable by the terms of their bonds.

The judgment and order of the court below, holding Matthew Ryan liable on the bond in controversy, will be reversed.

All the Justices concurring.