No. 28,645.

C. B. MISSIMORE, *Appellant*, v. C. HAUSER and THE PEOPLES STATE BANK, *Appellees*.

(285 Pac. 558.)

Opinion filed March 8, 1930.

William Keith, E. P. Villepigue and Lester Wilkinson, all of Wichita, for the appellant.

Thomas C. Wilson, Henry Lampl and Rupert Teall, all of Wichita, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action for money had and received in which the trial court sustained a demurrer to the plaintiff's evidence on the ground that the action was barred by the statute of limitations, and to use the language of the appellant, "the only question involved in this appeal is whether or not the statute of limitations barred plaintiff's claim under the facts and circumstances in evidence at the close of plaintiff's case."

The theory of the appellant throughout his well-prepared brief is that the appellant never knew the appellees had the money belonging to the appellant until shortly before the bringing of this action, and he strongly relies on the provision of R. S. 60-306 that in an action for relief on the ground of fraud the cause of action shall not be deemed to have accrued until the discovery of the fraud, and he forcibly meets the anticipated argument of his opponents that this is not an action for relief on the ground of fraud by citing the case of *Guernsey v. Davis*, 67 Kan. 378, 73 Pac. 101, and *Washbon v. Bank*, 87 Kan. 698, 125 Pac. 17, where the court held the bar of the statute of limitations did not begin to run until the discovery of the breach of trust, the former being an action for money had and received, and the latter being an action to recover upon an implied contract.

The appellant ably and forcibly argues the relation and the rights and duties of these parties as principal and agent, bailor and bailee and trustee and *cestui que trust* and the general rule that when either of such relations exists the statute of limitations begins to run from the date of the demand, and directs our attention to the fact that the only demand made in this case was a few days before filing this action.

This preliminary statement as to the theory of the appellant may be helpful in applying it to the following statement of the evidence introduced by the appellant:

The evidence of plaintiff shows that on July 12, 1921, he assigned to his brother, W. L. Missimore, and J. W. Steiert a certificate of deposit for $2,000 issued to him by the Peoples State Bank of Wichita, Kansas, and took from them and their wives a note payable in ninety days at 8 per cent interest, and Steiert and wife, on October 17, 1921, executed to plaintiff a third mortgage on a certain tract of land to secure the same; that on August 20, 1921, W. L. Missimore and J. W. Steiert and their wives gave a substitute note for $2,076 for the certificate of deposit, including $76 interest which the plaintiff would lose by having the certificate of deposit cashed before maturity. In preparing this second note one of the blank notes at the bank where they all did business was used and the name of the bank printed therein remained as payee instead of the name of the plaintiff C. B. Missimore, as in the original note. This new note and the mortgage were left at the bank. Later the plain-

tiff saw the third mortgage given him by Steiert and wife as security and gave it back with a request for additional security.

In June, 1922, the defendant bank and Hauser, its president, entered into an arrangement with W. L. Missimore and J. W. Steiert for the sale of the Steiert land on which the third mortgage had been given the plaintiff and on which the bank had the first mortgage, and a deed was given by Steiert to W. L. Missimore for the price of $10,400, which W. L. Missimore raised by executing two mortgages thereon and giving a deed for security for an additional loan, and this amount being sufficient to cover the third mortgage held by plaintiff, was all paid to the defendant bank and defendant Hauser; that three or four months after the sale J. W. Steiert procured from Hauser the $2,076 note marked paid July 19, 1922, at which time Hauser told him, "I have taken care of Charles Missimore's mortgage." Later, in January, 1923, J. W. Steiert wrote the plaintiff, C. B. Missimore, asking for the return of the $2,000 note he and others had given, because it had been fully paid. Plaintiff's answer to this letter on January 15, 1923, is in part as follows:

"COMANCHE, OKLA., Jan. 15, 1923.

"Mr. J. N. Steiert, Wichita, Kan.:

"DEAR SIR—Your letter received and contents noted, and in regard to the $2,000 note and mortgage, I have a joint note of $2,000 with you and Will and your wives on it, but I have no mortgage on the farm; if I did I never did see it. The note is made payable at the Peoples State Bank at Wichita. Who did you pay this money to? They have never notified me that it was placed to my credit. I am writing the Peoples State Bank in regard to the payment; also going to write Will at Chickasha and if this money has been paid it is right that you should have your note and mortgage."

Plaintiff also wrote the Peoples State Bank the same day. Hauser, president of the Peoples State Bank, answered plaintiff's letter on the 26th of January, 1923, as follows:

"THE PEOPLES STATE BANK,

WICHITA, KAN., January 26, 1923.

"Mr. C. B. Missimore, Comanche, Okla.:

"DEAR MR. MISSIMORE—Answering your letter of the 15th, regarding the farm which was sold by Mr. Steiert, will say that it is true that Will bought the farm for $10,400, and that Will had to pay enough to cover the first mortgage, interest and expenses, and also the second mortgage which was held by us, and there was a balance due of $1,642 and some cents, and then Mr. Steiert owed $2,076, which was also included. You were supposed to have a mortgage which you did not wish to accept.

"This chattel mortgage of Steiert was signed by him and his wife. Now I know nothing of the arrangements between you and Will, but the above was

the way the settlement was made when the farm was sold. If you hold an additional note against Will and Steiert for $2,000, I know nothing about that and there never has been any money deposited here to your credit in this bank. I know nothing about your and Will's transactions.

"Trust that this will explain the matter fully.

"CH/PA            Yours truly,       C. HAUSER, *President.*"

The word "chattel," the second word in the second paragraph, is crossed out with a pen.

On the trial plaintiff testified that he never saw the $2,076 note until the day before the trial in this case; that he brought a suit against his brother and Steiert in September, 1925, on the $2,000 note; that during the progress of that trial in June, 1927, he first learned that the defendants, Hauser and the bank, had received and retained the money referred to and that he had never received any payment on either of said notes from any source.

W. L. Missimore testified that in 1922 he made arrangements with Mr. Hauser whereby the latter was to pay the C. B. Missimore mortgage and that he told his brother, C. B. Missimore, of this fact at the time when his brother was writing these letters to Hauser in 1923, at the time when Hauser wrote the letter denying that he owed it.

Appellant strenuously insists that there was no evidence that the plaintiff was informed that the defendants had the money with which to pay his note and mortgage until during the trial of the action against his brother and Steiert in June, 1927. This is according to his own testimony, although his brother says he told him of this arrangement in 1923, when he was receiving and writing letters about the matter. But the letters alone settle the matter of his having been informed. No one can read them and further insist that they do not convey the information about the sale of the mortgaged land and the collection of the $2,076 note and interest and the mortgage belonging to appellant. Appellant's only answer to the force of these letters as information is that he had previously received from his brother and Steiert so many promises and assurances of payment that he had no confidence in what they told him, but did rely upon and believe what was written to him by Hauser and the bank, and calls special attention to the last part of that letter where it is stated, "There never has been any money deposited here to your credit in this bank." An equal degree of confidence in the statements contained in the first paragraph of the letter would have informed appellant that the land on which he

held a third mortgage given by Steiert had been sold for $10,400, which was sufficient to pay the first and second mortgage and the $2,076 note which Steiert owed. Appellant knew he held the third mortgage on this land given by Steiert and he knew a substitute note was to be given by Steiert and his own brother for the $2,000 loan and the lost interest on the certificate of deposit. The first paragraph shows conclusively that the defendants collected and received the money belonging to the plaintiff, while the last paragraph simply says there is none deposited to his credit—very different propositions from a banking standpoint, and this action is for money had and received. We cannot with these letters before us accept the theory of the appellant that he never knew of defendants' receiving this money belonging to him until shortly before the bringing of this action.

With this evidence as to the appellant having such information on or about the date of the Hauser letter, January 26, 1923, several of the legal questions mentioned in the first part of this opinion are necessarily eliminated, and the case becomes almost entirely a fact case.

This action was commenced June 8, 1927, more than four years after plaintiff knew that defendants had received the money belonging to him.

Conceding all the points claimed by appellant as to concealment of fraud and the running of the statute of limitations after the discovery of fraud in cases of this character, there is nothing left along these lines to be considered when the plaintiff as a matter of fact actually knew all that was necessary to be known about defendants' having his money more than four years before he took any steps to recover it.

It is insisted that there existed between these parties the relation of principal and agent, bailor and bailee and trustee and *cestui que trust,* and under such circumstances the relation is presumed to continue until severed, notwithstanding there may have been a breach of obligation and duty, and that the statute of limitations does not begin to run until a demand is made, which in this case was only a few days prior to the filing of this action. We do not deem it necessary to decide in this case the exact relation these parties bore to each other, whether one of the three suggested by the appellant or that of debtor and creditor. The authorities cited by appellant support his contention that in certain relationships

a demand is necessary before the statute of limitations begins to run, but they do not go to the extent of requiring it in any relation of the parties where it was known in advance that it would be ineffectual and unavailing. (*C. K. & W. Rld. Co. v. Comm'rs of Chase Co.*, 49 Kan. 399, 30 Pac. 456; *Ackerson v. Zinc Co.*, 96 Kan. 781, 153 Pac. 530.)

A demand in this case, whatever we might determine the relation of the parties to be, would have accomplished nothing. The defendants in the same letter which informed the plaintiff of their having collected the note and mortgage belonging to him denied any liability therefor, and repudiated every relation and obligation that might possibly have existed. Under such circumstances no demand is necessary.

"A refusal to perform or denial of liability dispenses with the necessity of a further demand and sets the statute in motion. Where a bank, either in terms or in effect, has denied liability to its depositor for the balance of a general deposit, this is an act on the part of the bank dispensing with a demand, and the depositor's cause of action thereupon accrues and the statute of limitations, where one is applicable, is set in motion." (37 C. J. 963.)

And the following from 17 R. C. L.:

"A trustee cannot ordinarily plead the statute of limitations until he has previously divested himself of the trust by discharging it, or by denying his liability to discharge it further, and knowledge of this fact has been brought home to the *cestui que trust*. On the repudiation of the trust, the trustee's possession becomes adverse, and suit must be prosecuted within the time allotted by the statute of limitations.

. . . . . . . . . . . . . .

"If a voluntary trustee does not repudiate the trust, but continues to act under and in harmony with it, the beneficiaries have no right of action against him, and the statute must remain inoperative until the trust is repudiated.

. . . . . . . . . . . . . .

"It has been declared that as long as there is a continuing and subsisting equitable trust acknowledged or acted upon by the parties, the statute of limitations does not apply, but if the trustee denies the right of his *cestui que trust,* and the possession becomes adverse, lapse of time from that period may constitute a bar in equity.

. . . . . . . . . . . . . .

"The statute of limitations does not commence to run in favor of the bank until there has been a demand by check or otherwise and a refusal to pay, unless by some act on the part of the bank, the necessity of demand has been dispensed with." (pp. 710, 794, 795, 801.)

"While the presentation of a check is the usual method by which a customer demands the payment of money deposited in a bank, formal demand is not essential to a recovery where the payment is refused on other grounds and

the bank denies that it holds any of the depositor's money or that it is indebted to him." (*Altman v. Bank,* 86 Kan. 930, syl. ¶ 2, 122 Pac. 874.)

We find no error in the sustaining of the demurrer to the evidence of the plaintiff on account of the action being barred by the statute of limitations, nor in the overruling of the motion for new trial.

The judgment is affirmed.