(806 P.2d 491)

No. 64,852

CAROLEE SAUDER LEEK, Trustee, WALTER J. KLASSEN TRUST, *Appellee*, v. THE ALLIANCE FUND, INC., *Appellant*.

Petition for review denied April 25, 1991.

Opinion filed February 22, 1991.

*Scott I. Asner*, of Olathe, for appellant.

*Gregory M. Dennis*, of Perry & Hamill, of Overland Park, for appellee.

Before ELLIOTT, P.J., LARSON, J., and DAVID S. KNUDSON, District Judge, assigned.

KNUDSON, J.: The Alliance Fund, Inc., appeals the trial court's award of income dividends and capital gains distributions on 683

shares of its stock owned by the Walter J. Klassen trust. The trust cross-appeals the disallowance of prejudgment interest.

The following issues are raised on appeal:

1. Whether the court erred in finding the trust had not sold or otherwise transferred the stock;
2. whether the court erred in finding this action was not barred by the applicable statute of limitations;
3. whether the court erred in allowing a money judgment against the fund based upon accumulated capital gains distributions and income dividends from 1959; and
4. whether the court erred in only allowing interest on income dividends from 1985 to the present.

We conclude the trial court correctly decided each issue and its decision is affirmed.

At the time of his death in 1956, Walter J. Klassen owned and held in his name shares of stock in Chemical Fund, Inc., which is now The Alliance Fund, Inc. (Fund). Upon probate of his estate, the shares were transferred and delivered to the trustees of a testamentary trust he had established.

The Fund is described by the litigants as an "open-end, diversified investment company or mutual fund registered with the federal Securities & Exchange Commission [S.E.C.] under the Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq.*" Its capital gains distributions are automatically reinvested to purchase more shares in the Fund unless the shareholder elects in writing to have the disbursement in cash. Conversely, the Fund pays income dividends which are disbursed in cash unless the shareholder elects in writing to have the dividends reinvested in shares of stock. The trust at no time filed a writing that would have changed the method of disbursements.

The trust has in its possession 683 shares of stock in the Fund held since December 29, 1959. The last receipt by the trust of a reinvested capital gains distribution was of 21 shares on December 29, 1959. Shortly thereafter, on January 12, 1960, the trust received $2.06, which was a fractional cash payment of the capital gains distribution after the automatic reinvestment by purchase of whole shares.

The inexplicable then occurs—for a period of 23 years there is a blackout of communication or correspondence between the

Fund and the trust. The trust apparently made no inquiries of the Fund, and the Fund neither credited nor paid the trust any of the capital gains distributions or income dividends that were declared through the years.

In a financial statement on February 22, 1983, Ray C. Wagner, then trustee, indicated he had written to the Fund's research department in an effort to discover what had occurred with the stock. He had not then received a reply and the record is silent as to whether one was ever received or that he further pursued the matter. The current trustee, Carolee Sauder Leek, wrote the Fund on January 15, 1985, regarding liquidating the stock held in the Fund. On June 22, 1988, the Fund indicated it would not pay accrued distributions and dividends on the 683 shares of stock. The trust then filed this litigation on June 7, 1989.

The trial court allowed the plaintiff's claim for accrual of all capital gains distributions, which, including two stock splits and reinvestment, would be the current value of 10,857 shares totaling $61,667.76. All income dividends were awarded, which amounted to $13,863.66, including $154.01 as a capital gains remainder. Finally, prejudgment interest was allowed from 1985 on the income dividends, totaling $5,731.74.

### Sale or Other Transfer of Stock

The trust has in its possession seven certificates of stock representing 683 shares held since December 29, 1959. Nevertheless, the Fund contends the preponderance of evidence establishes the stock must have been sold or otherwise transferred by the trust.

This litigation was submitted to the trial court upon written stipulations and documentary evidence. It is therefore subject to de novo review by this court. *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, 744 P.2d 840 (1987); *In re Estate of Moe*, 11 Kan. App. 2d 244, 246, 719 P.2d 7, *rev'd on other grounds* 240 Kan. 242 (1986).

The Fund asserts that, because it paid dividends through 1959, trust records projected sale of the stock in 1964, and there was no inquiry by the trustee from 1960 until 1983, it was entitled to a presumption that the stock was sold or otherwise transferred. We do not agree.

K.S.A. 17-6408 states in part, "The shares of a corporation shall be represented by certificates." Although there is no case law in

Kansas directly on point, several jurisdictions have appropriately concluded possession of stock certificates is evidence of ownership and control over the stock. *Holly Sugar Corporation v. Wilson*, 101 Colo. 511, Syl. ¶ 1, 75 P.2d 149 (1937); *Zamore v. Whitten*, 395 A.2d 435, 443 (Me. 1978); *Yeaman v. Galveston City Company*, 106 Tex. 389, Syl. ¶ 3, 167 S.W. 710 (1914).

Here, the trust holds seven stock certificates in the Fund, representing 683 shares of stock. In an accounting filed on January 22, 1964, upon the resignation of a trustee, all of the stock certificates were listed as assets of the trust. There are no orders or journal entries from the probate court approving or authorizing a sale of the stock. Although the financial statement for 1963 and 1964 estimated profit from the sale of mutual fund shares, no other documentation exists that the stock was, in fact sold. It is significant that the trust held mutual shares in other companies. Thus, we cannot conclude from this one notation that the reference was to the stock holdings in issue.

The Fund asserts sale or transfer of the stock as a defense to the claims of the trust. The general rule is that "the burden of proof is upon the party asserting the affirmative of an issue." *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 412, 681 P.2d 1038, *cert. denied* 469 U.S. 965 (1984). See *In re Estate of Robinson*, 236 Kan. 431, 439, 690 P.2d 1383 (1984). The Fund contends it was entitled to a presumption of sale or transfer of the stock by the trust. This assertion is without merit for several reasons. First, there is no such presumption as that term is defined under K.S.A. 60-413. At best, we believe the argument is that an inference of sale or transfer must be entertained based upon the evidence presented. Second, possession of the stock certificates does give rise to a rebuttable presumption of ownership that the Fund must overcome. The Fund presented no affirmative evidence from its corporate books or records demonstrating that there had been cancellation or transfer of certificates held by the trust. It relied entirely upon the single notation from the trust's financial statement for 1963 and 1964 and the passage of 23 years without inquiry by the trust. We do not find the Fund's evidence to be persuasive. We previously noted the notation upon the financial statement does not refer to any particular stocks. Standing alone it has scant probative value, if any.

Finally, the mere passage of time, albeit a considerable period of time, is in and of itself insufficient to rebut a presumption of ownership based upon continuous possession of the stock certificates. The trial court was correct in its finding that the trust was the owner of the stock.

## Statute of Limitations

The Fund contends this court must decide the following: which state's statute of limitation applies, whether the three-year or five-year statute is applicable, and when the statute of limitations begins to run. However, the parties appear to agree, and we concur, that the Kansas statute of limitations is applicable. *Wortman v. Sun Oil Co.*, 241 Kan. 226, 755 P.2d 488 (1987), *aff'd* 486 U.S. 717, 100 L.Ed.2d 743, 108 S. Ct. 2117 (1988). We also believe our conclusion as to when the statute of limitations begins to run makes moot the issue of which statute of repose would be applicable.

There is no direct authority in Kansas addressing this issue. In other jurisdictions there is a split of authority, with most favoring the requirement of a demand and refusal before the statute of limitations begins to run. One commentator stated:

"It is the general rule that the statute begins to run when the cause of action accrues, or, in other words, from the time when the dividend becomes payable. Some courts hold that if the dividend is not payable on any specified day, and is therefore payable on demand, the statute does not begin to run until demand and refusal, . . . and in at least one state this is the rule even where the dividends are payable on a specified date." 11 Fletcher, Cyclopedia of the Law of Private Corporations § 5370 (perm. ed. 1986).

The Fund cites two cases in support of its position that the statute of limitations begins to run when the dividend is declared. See *Winchester & Lexington Turnpike Co. v. Wickliffe's Adm'r.*, 100 Ky. 531, 38 S.W. 866 (1897); *Jacques v. White Knob Copper and Development Co.*, 260 App. Div. 640, 23 N.Y.S.2d 326 (1940). The reasoning for this position is that, once a dividend has been declared, the stockholder may demand and receive payment. In *Winchester*, the court agreed that, before a suit could be maintained, demand had to be made upon the corporation for payment. 100 Ky. at 536. Failure to make a demand, however, was held not to extend the statute of limitations. In accord with the above-cited cases, the Fund also cites *Freeto Construction*

*Co. v. American Hoist & Derrick Co.*, 203 Kan. 741, 746, 457 P.2d 1 (1969). It was held in *Freeto* that "[a] cause of action for breach of an express warranty accrues at the time of the breach which, under the facts appear ing in the record, occurred at the time of the sale and delivery of the subject of the express warranty." *Freeto Construction Co. v. American Hoist & Derrick Co.*, 203 Kan. 741, Syl. ¶ 3. We perceive *Freeto* to have little relevance to the case at bar as it is factually dissimilar and not instructive as to when a breach occurs for failure to pay declared dividends.

Far more jurisdictions hold a contrary view from the cases cited by the Fund. See *Schneider v. Union Oil Co.*, 6 Cal. App. 3d 987, 86 Cal. Rptr. 315 (1970); *Holly Sugar Corporation v. Wilson*, 101 Colo. 511; *Boston & Roxbury Mill Corp. v. Tyndale*, 218 Mass. 425, 105 N.E. 982 (1914); *Kobogum v. Jackson Iron Co.*, 76 Mich. 498, 43 N.W. 602 (1889); *Philadelphia, Wilmington, and Baltimore Railroad Co. v. Cowell*, 28 Pa. 329 (1857); *Yeaman v. Galveston City Company*, 106 Tex. 389; *Morey v. Fish Bros. Wagon Co. and another*, 108 Wis. 520, 84 N.W. 862 (1901). In *Yeaman*, the court expressed the rationale for requiring both a demand and refusal before the statute of limitations begins to run.

> "The holding of these authorities is upon the principle that the trusteeship of a corporation for its stockholders is that of an acknowledged and continuing trust . . . . There can be no substantial difference between the trusteeship of a corporation as it relates to the stock of a shareholder and its duty to him in respect to the profits or divide nds upon his stock. He is under no obligation to draw or demand his dividends within any prescribed period. He may leave them with the corporation if he chooses, and be under no default. The debt which a declared dividend creates on the part of the corporation to the stockholder, is one payable only on demand, as it is the obligation of a bank to its depositors. It is not subject to limitation until there has been a demand upon the corporation and a refusal to pay. [Citation omitted.]" 106 Tex. at 426.

The reasoning is that, although a stockholder may demand payment once a dividend has been declared, there is no breach until the corporation refuses to pay.

The concept of "demand and refusal" in contract actions is not foreign to Kansas jurisprudence. In *Rex v. Warner*, 183 Kan.

763, 332 P.2d 572 (1958), an action was brought to enforce a contract. The Supreme Court stated:

"[A]n action upon a contract not in writing must be commenced within three years after the cause of action shall have accrued. Generally speaking, a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises, or when there is a demand capable of present enforcement. [Citation omitted.] Stated differently, an obligation must exist upon one party in favor of the other, the performance of which is refused." 183 Kan. at 769.

See *Missimore v. Hauser*, 130 Kan. 20, 285 Pac. 558 (1930); *Green v. Williams*, 21 Kan. 64 (1878).

We believe the majority view requiring refusal before a cause of action arises to enforce the distribution of corporate dividends payable on demand is sound and should be adopted by this court. The parties have stipulated that the trust first inquired about liquidating the shares on January 15, 1985. The Fund refused to pay accrued distributions and dividends on June 22, 1988. Thus, the suit was timely filed on June 7, 1989, within either the three- or five-year statute of limitations, since refusal commenced the running of the statute.

*Accumulated Capital Gains Distributions and Income Dividends*

The Fund argues that allowing the trustee to recover on accumulated capital gains distributions and income dividends on those distributions creates facts not in evidence. It contends there are only 683 shares of stock and the corporation never issued any more to the trust. It further contends such an award is in conflict with the rule that claims for dividends do not bear interest until demand is made. In addition, the Fund alleges the award is inconsistent with the court's ruling as to the allowance of interest on income dividends.

These arguments are without merit. Allowing an award based upon accumulated capital gains distributions and income dividends actually declared by the Fund is not tantamount to an award of interest. As indicated in the written stipulation of facts, the reinvestment of capital gains in shares of stock was automatic unless requested otherwise by the shareholder in writing. Therefore, by finding capital gains distributions and income dividends were due from 1960, when the Fund quit paying, the award was consistent with the Fund's stated policy and the intent of the

parties. The trustee was only receiving what it would have been entitled to had the Fund fulfilled its obligation to the trustee. The fact that the shares had not been issued is no defense to the Fund's liability. This lawsuit was filed precisely for that reason. The number of shares to which the trustee is entitled is readily ascertainable and does not require the court to rely on a fact not in evidence. For these reasons, the trial court's award of accumulated capital gains distributions and income dividends was proper.

*Interest Allowable on the Income Dividends*

The trial court allowed interest on the income dividends only from the date demand was made on the Fund for payment. On cross-appeal, the trustee contends interest should have been recoverable from the date dividends were declared.

Although there is authority for both positions, we believe the facts of this case warrant a conclusion that interest should only be allowed from the date demand was made upon the Fund, rather than from the date income dividends were declared.

"When a stockholder demands payment of a dividend, and it is refused, he is entitled to recover interest from the time of such demand and refusal, but he is not entitled to interest before a demand and refusal, in the absence of an express or implied agreement to the contrary." 11 Fletcher, Cyclopedia of the Law of Public Corporations § 5372 (perm. ed. 1986).

There is also persuasive case law of the same view. *Railroad Credit Corporation v. Hawkins*, 80 F.2d 818 (4th Cir. 1936); *Perkins v. Benguet Cons. Min. Co.*, 55 Cal. App. 2d 720, 132 P.2d 70 (1942); *Yeaman v. Galveston City Company*, 106 Tex. at 426.

The income dividends were not subject to automatic reinvestment as were the capital gains distributions. Nor is there evidence of any express or implied agreement between the Fund and its stockholders that would suggest that the dividends should be considered due prior to a demand. Thus, it is logical to require a demand before interest would accrue on the dividends.

The judgment of the district court is affirmed.